## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

**KHALID MOURTAGA,**
**SALSABEEL ELHELOU,**
**SAHAR HARARA,**                             Case: 1:24-cv-13038
**SAWSAN KAHIL,**
**MAROWA ABUSHARIA,**                          Hon.:
**MOHANAD ALNAJJAR,**
**MARIAM ALRAYES,**
**HEBA ENAYEH,**
**SAMIA ABUALREESH,**                          **Jury Trial Demanded**

     Plaintiffs**,**

     **v.**

**JOSEPH R. BIDEN,** United States
President, in his official capacity only;

**ANTONY BLINKEN,** United States
Secretary of State, in his official capacity
only; and,

**LLOYD J. AUSTIN III,** United States
Secretary of Defense, in his official capacity
only;

     Defendants.

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.      Plaintiffs Khalid Mourtaga, Salsabeel ElHelou, Sahar Harara, Sawsan Kahil, Marowa Abusharia, Mohanad Alnajjar, Mariam Alrayes, Heba Enayeh, and Samia Abualreesh ("Plaintiffs") file this Complaint for Declaratory and Injunctive Relief against

Joseph R. Biden, Antony Blinken, and Lloyd J. Austin III ("Defendants") for violating the Fifth Amendment of the United States Constitution and the Administrative Procedures Act, 5 U.S.C. 706(2)(A), by depriving Plaintiffs of the normal and typical evacuation efforts the federal government extends to Americans who are not Palestinians.

## **INTRODUCTION**

2.      Plaintiffs are United States citizens, legal permanent residents, and immediate relatives of United States persons—stranded in Gaza and deprived of the standard efforts the United States government has always deployed to evacuate United States persons and their families from warzones.

3.      Through this lawsuit, Plaintiffs challenge the constitutionality of the federal government's discriminatory practice of abandoning Americans of Palestinian national origin trapped in a warzone while promptly evacuating and acting to protect similarly situated Americans of different national origins from the same warzone.

4.      This action seeks to compel Defendants to fulfill their statutory obligations to make the same effort to evacuate these Plaintiffs as they have other Americans in other situations.

5.      Defendants' reasons for their failure to evacuate Plaintiffs stranded in Gaza are not compelling government interests, as the feasibility of evacuation is clear, not only because Defendants evacuated American persons of other national origins described below, but also because Defendants have evacuated other United States citizens, legal permanent residents, and their immediate relatives under comparable circumstances.

## JURISDICTION AND VENUE

6.     This civil action arises under the United States Constitution, 42 U.S.C. § 1983, and the laws of the United States to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

7.     This case presents a federal question within this Court's jurisdiction pursuant to 28 U.S.C. § 1331.

8.     Venue is proper in this Court under 28 U.S.C. § 1391(e) because the Defendants are officers or agencies of the United States, and no real property is involved in this action.

9.     This Court may also exercise jurisdiction under the Administrative Procedures Act, 5 U.S.C. §§ 702-704, and the Declaratory Judgment Act 28 U.S.C. §§ 2201, 2202.

10.     Injunctive relief is authorized by 28 U.S.C. §§ 2283, 2284 and Rule 65 of the Federal Rules of Civil Procedure.

11.     Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(b) insofar as Defendants operate and transact business in this judicial district, and because the events giving rise to Plaintiffs' claims occurred within this District.

## PARTIES

12.     Plaintiff Khalid Mourtaga is a United States citizen of Palestinian national origin that resides in Oxford, Mississippi. He is currently stranded in Gaza with his mother Rania Mourtaga, and father, Kamal Mourtaga.

13.     Plaintiff Salsabeel Elhelou is a United States citizen of Palestinian national origin that resides in Chicago, Illinois, within this district. She is currently stranded in Gaza with her three minor children. She brings this suit on behalf of herself and her three minor

children Ayham Almathloum (7 years old), Banan Almathloum (12 years old), and Almotasem Biallah Almathloum (15 years old).

14. Plaintiff Sahar Harara is a United States Citizen of Palestinian national origin that resides in Dallas, Texas. She brings this suit on behalf of herself and her mother, Mariam Harara, a lawful permanent resident of the United States of Palestinian national origin who is currently stranded in Gaza.

15. Plaintiff Sawsan Kahil is a United States citizen of Palestinian national origin that resides in St. Louis, Missouri. She brings this suit on behalf of herself and her spouse, Ehab Alayzji, who is currently stranded in Gaza.

16. Plaintiff Marowa Abusharia is a United States citizen from Perth Amboy City, New Jersey. She brings this suit on behalf of herself and her spouse, Loai Abusharia, who is currently stranded in Gaza.

17. Plaintiff Mariam Elrayes is a United States citizen that resides in Chicago, Illinois. She brings this suit on behalf of herself and her father, Bassam Alrayes, and her mother, Heba Altamimi, who are currently stranded in Gaza.

18. Plaintiff Heba Enayeh is a United States citizen that resides in Crown Point, Indiana. She brings this suit on behalf of herself and her minor son, Abdallah Hebatallah, who is currently stranded in Gaza.

19. Plaintiff Mohanad Alnajjar is a United States citizen that resides in Hillsboro, Oregon. He brings this suit on behalf of himself and his mother, Asmaa Alnajjar, who is currently stranded in Gaza.

20. Plaintiff Samia Ali Abualreesh is a lawful permanent resident that resides in Clovis, California. She is currently stranded in Gaza.

21.     Defendant Joseph R. Biden ("President Biden") is the President of the United States. He is sued in his official capacity for omissions and actions undertaken as part of his duties as the head of the federal government's Executive Branch.

22.     Defendant Antony Blinken ("Blinken") is the United States Secretary of State and, as the head of the United States Department of State ("State Department"), is the senior diplomatic officer of the United States. He is sued in his official capacity for omissions and actions undertaken as part of his duties as the head of the State Department of the United States.

23.     Defendant Lloyd J. Austin III ("Austin") is the United States Secretary of Defense and next to the President of the United States, is responsible for civilian control of the United States Military and the United States Department of Defense ("Defense Department"). He is sued in his official capacity for omissions and actions undertaken as part of his duties as the Secretary of Defense of the United States.

## FACTUAL ALLEGATIONS

### Federal Law Establishes Duty to Evacuate

24.     The United States government's policy and duty to evacuate its citizens abroad is guided by a combination of legal statutes, executive orders, internal policies, and interagency agreements that separately and in the aggregate establish a mandatory, nondiscretionary duty to offer Plaintiffs the same evacuation efforts Defendants have made for the benefit of United States persons who are not Palestinian.

25.     Section 103 of the Omnibus Diplomatic Security and Antiterrorism Act of 1986 (P.L. 99-399; 22 U.S.C. §4802) requires the State Department to *"develop and implement*

policies and programs to provide for the safe and efficient evacuation of… private United States citizens when they are endangered.*"*

26.     Pursuant to Exec. Order No. 12,656, 3 C.F.R. 585 (1988), Assignment of Emergency Preparedness Responsibilities (as amended), during a "national security emergency" such as the one in Gaza, the Department of State has a mandatory, nondiscretionary duty to evacuate United States persons stranded there. Exec. Order No. 12,656, 3 C.F.R. 585 (1988).

27.     Executive Order 12, 656 also requires the Secretary of Defense to advise and assist the Secretary of State with the "protection, evacuation, and repatriation of United States citizens in threatened areas overseas."

28.     Defendant Blinken and Defendant Austin's duties to evacuate even Palestinians from Gaza is also reflected in an interagency agreement—the Memorandum of Agreement between the Departments of State and Defense on the Protection and Evacuation of United States Citizens and Designated Aliens Abroad ("DOS-DOD Evacuation Policy").[1]

29.     The DOS-DOD Evacuation Policy itemizes the roles and responsibilities the Department of State and the Department of Defense have in evacuating United States persons and their families from "threatened areas overseas."

30.     Pursuant to the DOS-DOD Evacuation Policy, the Department of State and Department of Defense agreed that it is the "policy of the United States Government" to

---

[1] *Memorandum of Agreement Between the Departments of State and Defense on the Protection and Evacuation of U.S. Citizens and Designated Aliens Abroad*, U.S. Dep't of State & U.S. Dep't of Def. (1997), https://prhome.defense.gov/Portals/52/Documents/PR%20Docs/DOS-DOD%20Memo%20of%20Agreement%20on%20Protection%20and%20Evacuation.pdf.

"[p]rotect United States citizens and nationals and designated other persons" and see to "their evacuation to and welfare in relatively safe areas."[2]

31.     Further, the DOS-DOD Evacuation Policy recognizes as United States government policy the reduction to a minimum amount of United States citizens, nationals, and designated other persons "subject to the risk of death and/or seizure as hostages" and "in probable or actual combat areas."[3]

32.     Moreover, pursuant to the DOS-DOD Evacuation Policy, the Department of State must prepare plans for the protection and evacuation of all United States citizens and nationals and designated other persons abroad, coordinate with the Department of Defense, and implement these evacuation plans as the need arises.[4]

33.     The DOS-DOD Evacuation Policy reflects Defendants' own understanding that the federal government's duty to evacuate United States persons from warzones—even when it requires military assistance and the vast resources of the federal government—clear and unambiguous, and therefore not discretionary.

**Gaza Becomes a Warzone**

34.     On October 11, 2023, the United States Department of State ("State Department") declared Gaza unsafe and issued a travel advisory to United States citizens intending to travel there.

35.     Unfortunately, United States citizens, including Plaintiffs, were already present in Gaza prior to this travel advisory and had no prior notice of or ability to flee the violence.

---

[2] *Id*.

[3] *Id*.

[4] *Id*.

36. Before Israel began its full-scale ground invasion of Gaza, numerous countries, including Canada, the United Kingdom, Ukraine, Australia, Brazil, Denmark, Greece, Kazakhstan, Italy, Mexico, Poland, Switzerland, and South Korea, promptly evacuated their civilians from Gaza.

37. On October 12, 2023, White House National Security Communications Advisor John Kirby stated in a White House press briefing that the United States government was arranging charter flights to evacuate Israeli Americans and their immediate relatives from Israel, emphasizing that the United States government was also *"exploring other options to expand the capacity of doing this, including exploring whether it's possible to help Americans leave by land and by sea…We are working hard on this."*[5]

38. During the same press briefing, when asked about the United States government's plans for evacuating Americans in Gaza, Kirby replied: *"They can't leave."*

### Plaintiffs attempt to obtain federal evacuation assistance

39. Following the attacks of October 7, 2023, all Plaintiffs registered with the State Department's Crisis Intake Form for evacuation assistance from the Gaza Strip ("Gaza").

40. The Department of State made available a Crisis Intake Form on its website for (a) United States citizens, their spouses, unmarried children under the age of 21, parents and siblings under the age of 21 and (b) Landed Permanent Residents, their spouses, and unmarried children under the age of 21.

---

[5] Press Briefing by Press Secretary Karine Jean-Pierre, The White House (Oct. 12, 2023), https://www.youtube.com/watch?v=Tq6BB3wKpRE.

41.     The purpose of the intake form was to help Defendants identify individuals in need of assistance to 1) determine their location within the conflict zone; and 2) verify their eligibility for evacuation support.

42.     Once an individual submitted their information through the Crisis Intake Form, they were required to await a response from the State Department's Task Force team.

43.     Plaintiffs, at varying times, received email notifications from the State Department informing them that the United States government had approved their name for inclusion on an evacuation list that the United States had established with Israeli and Egyptian officials.

44.     The emails would explain that the United States Department of State was working to "add you to the official, online crossing list for Rafah." Once added to the list, the email notifications explained, "you should be permitted to exist Gaza and enter Egypt."

45.     The email notification instructed individuals to regularly monitor a designated Facebook page, where lists were published indicating the day their evacuation from Gaza would commence.

46.     Although the existence of Defendants' own evacuation list and the intergovernmental policy mechanism of the online crossing list shows the feasibility of Plaintiffs' own evacuation, Plaintiffs remain stranded in Gaza.

**Defendants evacuate citizens of other nationalities in comparable situations**

47.     The United States Government has a longstanding practice of evacuating United States persons and their immediate relatives from conflict zones.

48.     Over the years, the United States government has provided humanitarian evacuations for hundreds of thousands of Americans and their immediate relatives who have inadvertently found themselves trapped in war zones.

49.     For example, Defendants mobilized within days following October 7, 2023, to evacuate Israeli Americans and their non-American family members.

50.     On October 13, 2023, the State Department initiated departure assistance on cruise ships for Americans and their families wishing to depart Israel and come to the United States.

51.     Everyone holding a United States passport in Israel, whether or not they had registered with the United States Embassy in Jerusalem, was allowed to board. Passengers were greeted with champagne, mimosas, and lavish buffets.[6] In one instance, Florida Governor Ron DeSantis funded a flight to evacuate Floridians from Israel.[7]

### Afghanistan (2021)

52.     In August 2021, the Taliban abruptly seized control of Afghanistan resulting in the largest humanitarian evacuation since the fall of Saigon.[8]

53.     The State Department moved quickly to identify American citizens, legal permanent residents, and eligible Afghan allies for evacuation. Meanwhile, the United States military led physical evacuation efforts, managing airlift operations and providing security at

---

[6] Lori Donahue, *Evacuating In Style: US Sends Cruise Ship to Get its Citizens Out of Israel*, *Jerusalem Post* (Oct. 17, 2023), https://www.jpost.com/israel-news/article-768677.

[7] *Florida Spent $4 Million Flying Americans Out of Israel to Tampa*, *CBS News* (Dec. 18, 2024), https://www.cbsnews.com/miami/news/florida-spent-4-million-flying-americans-out-of-israel-to-tampa/; Will Steakin, *DeSantis Touts Role in Organizing Flights from Israel, but Details Are Murky*, *ABC News* (Dec. 18, 2024), https://abcnews.go.com/Politics/desantis-touts-role-organizing-flights-israel-details-murky/story?id=104045514.

[8] U.S. Dep't of State, *Afghanistan After Action Review* (June 2023), available at https://www.state.gov/wp-content/uploads/2023/06/State-AAR-AFG.pdf.

Hamid Karzai International Airport in Kabul ensuring the safe passage for thousands of evacuees.

54. In a State Department Press Briefing on August 20, 2021, Spokesperson Ned Price said: "We're focused on safely getting as many people out of Afghanistan as quickly as possible. And of course, our top priority is the safety and security of the American people. To do that, we have set up an unprecedented task force with the sole goal of locating and offering guidance to any United States citizen who may be present in Afghanistan and who wishes to depart."[9]

55. The Afghanistan evacuation remains one of the largest evacuations ever carried out in United States history.

56. In the midst of the chaos, over the span of three weeks, the United States government facilitated the evacuation of 48,000 people including approximately 6,000 Americans amidst military-scale violence.[10]

*Lebanon (2006)*

57. On July 12, 2006, Israel launched a major military assault on Lebanon bombing the country's only international airport, blockading all ports and seizing all land crossings.

58. Within two days, State Department working in conjunction with the Department of Defense developed a plan to evacuate Americans and their immediate relatives using helicopters, United States military ships, and contracted commercial ships.

---

[9] U.S. Dep't of State, *Department Press Briefing – August 20, 2021*, https://www.state.gov/briefings/department-press-briefing-august-20-2021/ (last visited Dec. 18, 2024).
[10] Amanda Macias, *U.S. Evacuates 37,000 from Afghanistan as Taliban Calls August 31 Withdrawal Deadline 'Red Line'*, *CNBC* (Aug. 23, 2021), https://www.cnbc.com/2021/08/23/us-evacuates-37000-from-afghanistan-as-taliban-calls-august-31-withdrawal-deadline-red-line.html.

59.     Over the course of three months, the United States government oversaw the evacuation of 15,000 United States citizens by sea.

*Lebanon (2024)*

60.     In September 2024, Israel invaded the south of Lebanon.[11] By the State Department's estimates, 86,000 Americans were in Lebanon at the time.[12]

61.     On September 23, 2024, Defendant Austin spoke to his Israeli counterpart to ensure that Israeli security forces do not target or endanger United States citizens as fighting between Israel and Hezbollah escalated in Lebanon.[13]

62.     On September 25, 2024, the United States military deployed troops to Cyprus as a precautionary measure in anticipation of a potential evacuation of American citizens from Lebanon.[14]

63.     Americans seeking to evacuate Lebanon were provided several options facilitated by the State Department, including commercial flights and United States organized evacuation flights.[15]

64.     Moreover, through September to November 2024, the United States State Department held recurring virtual town halls to apprise Lebanese Americans in Lebanon of their evacuation options.

---

[11] *Israel launches ground operation in southern Lebanon, Israeli military says, The Wash. Post* (Sept. 30, 2024), https://www.washingtonpost.com/world/2024/09/30/israel-lebanon-hezbollah-hamas-war-news-gaza/.

[12] Alexander Ward, *Pentagon Worries Israel Is Close to Launching Ground War in Lebanon*, *The Wall Street Journal* (Sept. 19, 2024), https://www.wsj.com/world/middle-east/pentagon-worries-israel-is-close-to-launching-ground-war-in-lebanon-33683bf4.

[13] Barak Ravid, *U.S. asked Israel to ensure safety of Americans in Lebanon if they are evacuated, Axios* (Sept. 23, 2024), https://www.axios.com/2024/09/23/us-israel-lebanon-american-citizens-safety-evacuation.

[14] Natasha Bertrand & Alex Marquardt, *US troops deployed to Cyprus as fears of wider Middle East war intensify, CNN* (Sept. 25, 2024), https://www.cnn.com/2024/09/25/politics/us-troops-cyprus/index.html.

[15] *Department Press Briefing – October 3, 2024,* U.S. Dep't of State (Oct. 3, 2024), https://www.state.gov/briefings/department-press-briefing-october-3-2024/.

65.     During the State Department's October 8, 2024, virtual town hall, a State Department official noted that *"...[our] goal is to do everything conceivably possible in what is a challenging and very tough environment."* When counsel asked whether similar efforts were underway to evacuate remaining Americans in Gaza, the official's response was no.

### Sudan (2023)

66.     On April 15, 2023, war broke out unexpectedly in Sudan trapping hundreds of Americans who were evacuated by the United States government which escorted them out of the country under the protection of armed drones.

67.     With no functioning airport, fleeing Americans were forced to opt for a land evacuation by bus traveling 500 miles to Port Sudan under the protection of an American unmanned aircraft which flew above the bus convoy.[16]

### Libya (2011)

68.     On February 17th, 2011, hundreds of protestors took to the streets across Libya to protest against Muammar Gaddafi's regime.[17] In response, security forces killed and injured dozens of protestors.[18]

69.     By February 18th, protests had intensified and surrounded Tripoli's airport.[19]

---

[16] Zeke Miller, *US conducts 1st evacuation of its citizens from Sudan war, Associate Press* (Apr. 29, 2023), https://apnews.com/article/sudan-americans-biden-white-house-evacuation-993ef30bf43320023dc7d8d5ee202bcf.
[17] *Libya: Security Forces Fire on 'Day of Anger' Demonstrations, Human Rights Watch* (Feb. 17, 2011), https://www.hrw.org/news/2011/02/17/libya-security-forces-fire-day-anger-demonstrations.
[18] *Id.*
[19] *Id.*

70.     After United States attempts to evacuate citizens by plane from an overwhelmed Tripoli airport[20] were unsuccessful,[21] the United States government chartered a ferry set to depart Libya on February 23rd to evacuate 40 United States embassy personnel and 127 private United States citizens.[22]

## The United States can evacuate who it chooses from Gaza

71.     The United States has the authority to evacuate people from Gaza. Since October 7, 2023, there have been multiple U.S.-coordinated evacuations from Gaza, which prove that authority.

72.     In one case, the United States government worked closely with Israeli authorities to secure the safe extraction of a United States citizen's parent.[23]

73.     Fadi Sckak, a Palestinian American from California, contacted the undersigned counsel in December 2023 seeking help to evacuate his mother. Sckak told counsel that his parents (Zahra and Abdella Sckak) had applied to the State Department to exit Gaza, and while waiting for approval by the United States government, Abdella Sckak was shot to death by an Israeli sniper despite holding a white flag and an expired United States passport.[24]

74.     Sckak's mother, Zahra, was approved for departure in early December 2023. However, because she was stranded in besieged North Gaza and was unable to travel down

---

[20] Rachel Donadino, *American Ferry from Libya Arrives in Malta, N.Y. Times* (Feb. 26, 2011), https://www.nytimes.com/2011/02/26/world/africa/26evacuate.html.

[21] *Mass Exodus: Foreigners Evacuate Libya, CBS News* (Feb. 23, 2011), https://www.cbsnews.com/news/mass-exodus-foreigners-evacuate-libya/.

[22] Bill Chappell, *U.S. Struggles to Evacuate Libya, Others Don't, NPR* (Feb. 24, 2011), https://www.npr.org/sections/thetwo-way/2011/02/24/134034173/u-s-evacuation-attempt-hits-snags-in-libya.

[23] *U.S. Servicemember's Mother Rescued from Gaza, Special Operations Ass'ns. of America* (Jan. 8, 2024), https://soaa.org/soldier-mother-rescued-gaza/.

[24] *Id.*; *'I just want to see my mother again': Americans battle to get relatives out of Gaza, Times of Israel* (Dec. 24, 2023), https://www.timesofisrael.com/i-just-want-to-see-my-mother-again-americans-battle-to-get-relatives-out-of-gaza/.

the Gaza Strip to exit through Rafah crossing, which, at the time, was the only open border crossing.[25]

75.     After Fadi Sckak appeared on national news with counsel,[26] Fadi's younger brother, Ragi Sckak, an infantryman with the United States Army, was called into the office of his battalion commander and put in touch with a senior military official who informed him that the White House was exploring options to extract his mother from Gaza.[27]

76.     As a result of the urging of White House officials and other key figures in Washington, senior Israeli officials approved the evacuation of Zahra Sckak and her brother-in-law, Farid, a United States citizen, through the Rafah crossing.[28]

77.     Defendants achieved this outcome while hundreds of other United States citizens, including Plaintiffs, remained stranded in Gaza amidst Israel's devastating military campaign.

78.     In another instance, the United States government evacuated from Gaza a non-Palestinian woman, Fawzia Sido, by arranging her exit from Gaza.[29]

79.     Due to the closure of the Rafah crossing, Sido's evacuation was conducted at the Kerem Shalom crossing, a border crossing that remains open despite the closure of the Rafah crossing on May 6, 2024.[30]

---

[25] Ellen Knickmeyer, *Americans beg for help getting family out of Gaza*, *Associated Press* (Dec. 23, 2023), https://apnews.com/article/american-citizens-permanent-legal-residents-trapped-gaza-3d1dda48bed40c8b3e0dc2efa11caf9a.
[26] ABC News Live (@ABCNewsLive), *Twitter* (Mar. 18, 2024), https://x.com/ABCNewsLive/status/1737933931310117214.
[27] Hope Hodge Seck & Dan Lamothe, *Inside the daring plot to rescue an American soldier's mother from Gaza*, *The Wash. Post*, https://www.washingtonpost.com/national-security/2024/01/08/soldiers-mother-rescued-gaza/.
[28] *Id.*
[29] Timour Azhari, *Yazidi woman freed from Gaza in US-led operation after decade in captivity*, *Reuters* (Oct. 3, 2024), https://www.reuters.com/world/middle-east/yazidi-woman-freed-gaza-us-led-operation-after-decade-captivity-2024-10-03/.
[30] *Id.*

*Khalid Mourtaga*

80.     Plaintiff Khalid Mourtaga is a United States citizen of Palestinian national origin. He is from Oxford, Mississippi. Khalid, along with his parents, was approved by the United States State Department to evacuate Gaza in December of 2023.

81.     To date, only Khalid's mother's name appeared on the online crossing list. However, she has refused to exit on her own without her son and husband.

82.     In April of 2023, Khalid appeared on CNN alongside counsel to implore the United States government not to forget that Americans like him remain trapped in Gaza and that the Biden administration must act urgently to evacuate them. A few days later, Rafah crossing was seized by Israeli forces.

83.     Since then, Khalid, with the assistance of counsel, has made persistent efforts to seek relief by contacting the offices of Senator Cindy Hyde-Smith, Senator Tammy Duckworth, and Senator Tim Kaine. Despite these efforts, his concerns remain unresolved, leaving him without redress.

84.     Since the start of the war, Khalid has witnessed the death of countless loved ones including his grandfather, cousins and close friends. Along with his parents, Khalid has been forced to flee for his life at least seven times.

85.     Currently, Khalid and his parents face dire living conditions, deprived of clean water and sufficient nutrition. The limited food available, including rice and flour, is infested with worms, compounding their daily struggle for survival.

86.     At present, Khalid is suffering from untreated Hepatitis A.

87.     Khalid's mental anguish and distress has reached debilitating levels and is severely worsened by his government's lack of responsiveness to his desperate attempts to escape Gaza.

### Sahar Harara

88.     Plaintiff Sahar Harara is a United States citizen of Palestinian national origin. She resides in Dallas, Texas. When the war began, Sahar's elderly parents, both green card holders, had been in Gaza visiting family.

89.     Since October 2023, Sahar has been asking the United States State Department to evacuate her parents.

90.     In June of 2024, she learned her father had been killed in an Israeli airstrike. The same airstrike critically injured her elderly mother, also a United States green card holder.

91.     Despite being critically injured, Sahar's elderly mother remains stranded in Gaza without access to proper medical care. Now, in her weakened state, she is at a high risk of contracting gangrene and a full amputation of her hands and feet, with no hope of reprieve in sight.

92.     Her mental anguish and distress have overwhelmed her as she fights each day to make it to the next and are worsened by the United States' lack of responsiveness to their attempts to escape Gaza.

### Marowa Abusharia

93.     Plaintiff Marowa Abusharia is a United States citizen of Palestinian national origin. She resides in Perth Amboy City, New Jersey. Her spouse, Loai Abusharia, remains

stranded in North Gaza. As the spouse of a United States citizen and the parent of United States citizens, Loai qualifies for United States government evacuation assistance.

94.     In September of 2023, Marowa Abusharia traveled from Gaza to New Jersey to give birth to twin girls. The couple had plans for Loai to join Marowa following his green card interview which was to take place in Jordan in October 2023.

95.     However, when war broke out, Loai found himself trapped in northern Gaza where he currently remains.

96.     On October 6, 2024, Israel designated all of North Gaza as a combat zone and ordered the entire civilian population to evacuate.[31]

97.     On October 7, 2024, a UN Spokesperson stated that many in North Gaza were "trapped in homes and were unable to flee the combat area." Medicins Sans Frontieres (MSF) reported that "nobody is allowed to get in or out; anyone who tries is getting shot."[32]

98.     Loai remains trapped in North Gaza. Despite having been approved to evacuate months ago, Loai has been unable to evacuate and meet his twin daughter who is now a year old.

99.     Loai's physical and mental health has significantly deteriorated since the start of the war. He is currently on the brink of starvation.

100.    According to a November 26 report by the United Nations Office for the Coordination of Humanitarian Affairs (OCHA), people in North Gaza are almost completely cut off from essential services, food and health facilities.[33]

---

[31] *IPC Food Security Alert: Gaza*, Integrated Food Sec. Phase Classification (Nov. 2024), https://www.ipcinfo.org/fileadmin/user_upload/ipcinfo/docs/IPC_FRC_Alert_Gaza_Nov2024.pdf.
[32] *Id.*
[33] *Gaza Now: Current facts and figures, Gisha* (Dec. 11, 2024), https://gisha.org/en/the-humanitarian-catastrophe-in-gaza-facts-and-figures/.

101.    Further, on November 8, 2024, the Famine Review Committee of the Integrated Food Security Phase Classification (IPC) declared there is a strong likelihood that famine is imminent in areas within North Gaza requiring immediate action within days not weeks.[34]

102.    Loai's separation from his daughters and wife is unbearable and worsened by the U.S.'s lack of responsiveness to his attempts to escape Gaza.

*Mohanad Alnajjar*

103.    Plaintiff Mohanad Alnajjar is a United States citizen from of Palestinian national origin. He resides in Hillsboro, Oregon. His mother, Asmaa, qualifies for immediate evacuation assistance as a parent of a United States citizen.

104.    Asmaa was displaced from her home by Israeli airstrikes and has since sought refuge in a plastic tent in al-Mawasi.

105.    Asma is facing a shortage of medication, leaving her unable to manage her diabetes and high blood pressure, both of which have gone untreated for months. Prior to the war, Asma suffered from a major stroke and without her medication, the risk of a life-threatening stroke remains imminent.

106.    Mohanad is enduring extreme mental anguish due to the fear for his mother's wellbeing and safety, exacerbated by her prolonged suffering and the United States government's failure to respond to his attempts to help her Gaza.

---

[34] *IPC Food Security Alert: Gaza*, Integrated Food Sec. Phase Classification (Nov. 2024), https://www.ipcinfo.org/fileadmin/user_upload/ipcinfo/docs/IPC_FRC_Alert_Gaza_Nov2024.pdf.

*Heba Enayeh*

107.     Heba Enayeh is a United States citizen of Palestinian national origin. She resides in Crown Point, Indiana. Her 17-year-old son, Abdallah, is stranded in Gaza.

108.     As the minor child of a United States citizen, Abdallah is eligible for evacuation assistance from the United States government.

109.     Abdallah was approved by the United States government to exit Gaza in February 2024, but his name did not appear on the online crossing list, thereby precluding his departure from Gaza prior to the closure of the Rafah crossing on May 6, 2024.

110.     Abdallah suffers from hydronephrosis, a severe kidney condition that necessitates ongoing treatment and monitoring. His condition has previously required multiple surgeries, including the removal of one kidney.

111.     For months, Abdallah has been in urgent need of medical care to address his deteriorating health, but Gaza's healthcare system, crippled by the conflict, is incapable of providing him with necessary treatment. His health has steadily declined due to the lack of proper medical resources, leaving him in an increasingly fragile and precarious state.

112.     As a result of her government's failure to protect her son, Heba is enduring profound mental anguish and severe distress as she witnesses her young son's fight for his life from thousands of miles away. Separated by the conflict and unable to provide him with the care and comfort he desperately needs, she is crippled by fear and helplessness and checks daily to see if he has survived another day in Gaza.

113.     The United States government's failure to ensure Abdallah's timely evacuation has exacerbated her suffering, leaving her in constant despair.

*Mariam Alrayes*

114.     Plaintiff Mariam Alrayes is a United States citizen of Palestinian national origin. She is based in Chicago, Illinois. Her parents and minor siblings are stranded in Gaza.

115.     As the parents of a United States citizen, Mariam's parents are eligible for evacuation assistance from the United States government.

116.     Despite her diligent efforts to secure the evacuation of her family, the State Department failed to approve Mariam's elderly parents. This prevented them from being able to evacuate through the Rafah crossing before its closure, leaving them trapped in increasingly dire conditions.

117.     Mariam's family, which consists of her elderly parents and minor siblings, currently reside in a crowded tent in al-Mawasi, Khan Younis, where they sought refuge after their home was destroyed by Israeli airstrikes.

118.     Her father, Bassam, suffers from diabetes and sciatica and is in urgent need of surgery on his leg. He is barely able to walk, yet the few remaining local medical facilities remain too overwhelmed to admit him for treatment.

119.     The family's precarious health situation is further aggravated by the ongoing bombings and airstrikes. Recently, a nearby tent in al-Mawasi was obliterated by a 2,000-pound bomb, leaving a massive crater and terrifying those sheltering close by, including the Alrayes family.

120.     The physical hardships faced by the family are compounded by the immense mental anguish and debilitating distress caused by the war. The United States government's failure to ensure their timely evacuation has exacerbated their suffering, leaving them in life-threatening conditions with no clear path to safety.

*Sawsan Kahil*

121.     Plaintiff Sawsan Kahil is a United States citizen of Palestinian national origin. She resides in Carbondale, Illinois.

122.     On October 3, 2023, Sawsan married Ehab Alayzji in an intimate ceremony in Gaza. Sawsan's mother, Ragda Kahil, had traveled with her to attend the wedding.

123.     Within days of their wedding, Israeli forces invaded Gaza. Instead of celebrating their marriage in Illinois as planned, Ehab and Sawsan began their married life fleeing bombs and being displaced from one shelter to another.

124.     As the spouse of a United States citizen, Ehab qualified for immediate evacuation assistance with Sawsan. However, the United States Embassy in Jerusalem initially refused to approve him instead insisting on seeing proof of marriage documents which the couple did not have as a result of being forcibly displaced numerous times.

125.     Initially, Sawsan refused to evacuate without Ehab. However, in March of 2024, Sawsan was forced to exit Gaza without her husband because of her mother's deteriorating health.

126.     Upon her return to the United States, Sawsan persistently sought approval from Defendants for her husband's evacuation, which was finally granted in early May 2024. However, shortly thereafter, the Rafah Border Crossing was destroyed.

127.     Ehab remains trapped in Gaza, struggling daily to survive amidst unrelenting bombings, severe food shortages, lack of hygiene, and limited access to clean water. These conditions, combined with the prolonged separation from his wife and the United States government's lack of responsiveness to his efforts to escape, have compounded his severe mental anguish, extreme distress, and heartbreak to debilitating levels.

### *Salsabeel ElHelou*

128.     Salsabeel is a mother of three young children: Ayham (7 years old), Banan (12 years old), and Almotasem (15 years old).

129.     At the onset of the war, Salsabeel and her husband made the difficult decision to separate as a family to increase the chances that at least one parent and some of their children would survive Israeli airstrikes surrounding their home in North Gaza.

130.     On March 22, 2024, Salsabeel's name appeared on the online crossing list along with two of her children: Banan and Ayham. Her teenage son, Almotasem, did not appear on the list. The family had no choice but to remain in Gaza to avoid separation.

131.     On August 6, 2024, an Israeli airstrike shredded her teenage son Almotasem's back leaving him with open, untreated wounds, crippling his left leg and maiming his left arm.

132.     As a result of drinking and bathing in unclean water, all of the children suffer from painful skin conditions including pus-filled wounds that attract flies and mosquitoes. Both Ayham and Almotasem have lost several teeth as a result of malnutrition. It is increasingly difficult for the children to walk due to their injuries and weakness from a lack of food, leaving them at risk of not being able to flee Israeli bombardment.

133.     Salsabeel wakes daily to see if her children are still breathing and is currently experiencing debilitating mental anguish and distress worsened by the United States government's lack of responsiveness to their repeated attempts to escape Gaza.

### *Samia Abualreesh*

134.     Prior to the onset of the conflict, Samia regularly traveled to Gaza to visit her family. In October 2023, Samia had been enjoying time with her family when hostilities erupted unexpectedly.

135.     At the start of the conflict, the residence where Samia was staying was destroyed without warning by an Israeli airstrike, forcing her to flee for her life. Amid the ensuing chaos, she was forced to leave behind her green card.

136.     Samia sustained a leg injury during the bombardment and is currently unable to walk without assistance from her nephew. She has no access to medical care and is sheltering in a makeshift plastic tent. She lives in constant fear of being bombed and killed. The United States government's lack of responsiveness to her efforts to escape has exacerbated her extreme mental anguish and severe distress.

\* \* \*

137.     Defendants have full knowledge of the desperate condition of the Plaintiffs and yet have failed to fulfill their mandatory, non-discretionary duty to evacuate Palestinians from Gaza just like the federal government has evacuated other United States persons of other nationalities.

138.     Defendants have failed to fulfill their duty in spite of it being feasible to evacuate Plaintiffs from Gaza. Not only has the United States government carried out evacuation operations post-October 7, 2023, but it has continued to evacuate select individuals out of Gaza even after the closure of the Rafah border on May 6, 2024.

139.     Since then, hundreds of civilians have exited Gaza through the Kerem Shalom crossing.[35]

---

[35] *Id.*

140.     On or about May 17, 2024, approximately seventeen American doctors were evacuated from the Kerem Shalom crossing in an operation coordinated by the State Department.[36]

141.     On or about June 28, 2024, injured and ill children, accompanied by their caretakers, began departing Gaza through the Kerem Shalom crossing. Since that date, hundreds of children and their families have successfully exited Gaza, many with the direct assistance and support of the United States Department of State, which has facilitated their travel to the United States by providing B1/B2 visas for medical treatment.[37]

142.     The United States government's refusal to conduct evacuation operations in Gaza for Palestinian American citizens and their immediate family members while overseeing evacuation for individuals with no connection to the United States or who are not Palestinian demonstrates that the United States government is treating United States citizens of Palestinian national origin differently than United States citizens of other national origins, further entrenching the discriminatory two-tier system.

## COUNT I
### Violation of the Fifth Amendment of the United States Constitution
### (Denial of Equal Protection)

143.     Plaintiffs incorporate and reallege paragraphs 1-154 as if fully set forth herein.

144.     Plaintiffs are members of the protected class of Palestinian Americans.

---

[36] Abigail Williams, *17 of 20 U.S. Doctors Stuck in Gaza Depart With the Help of American Officials, Source Says, NBC News* (May 17, 2024), https://www.nbcnews.com/news/world/17-20-us-doctors-stuck-gaza-depart-help-us-officials-source-says-rcna152866.

[37] Tareq El Helou, *Wounded and sick children leave besieged Gaza Strip, in first medical evacuation in weeks, CNN* (Jun 28, 2024), https://www.cnn.com/2024/06/28/middleeast/israel-gaza-medical-evacuation-palestinian-children-intl/index.html

145.     Plaintiffs are similarly situated to other United States Citizens who have received evacuation services from the very same war zone, as well as comparable ones, in which they now find themselves trapped with no means of escape.

146.     Since the onset of regional hostilities, Defendants have consistently prioritized evacuation support for similarly situated groups — first arranging the expedited evacuation of Israeli Americans and their immediate relatives in October 2023 and subsequently offering evacuation assistance to Lebanese Americans and their immediate relatives, beginning in September 2024.

147.     Defendants' failure to extend similar evacuation efforts to Palestinian Americans has created a two-tier system sending a clear signal about the prioritization of its citizens, effectively endorsing discriminatory policies that disproportionately disadvantage Palestinian Americans.

148.     Federal law, an executive order, and an interagency agreement establish that Defendants have a clear and nondiscretionary duty to protect and evacuate United States citizens and Nationals in the threatened areas overseas.

149.     Defendants failed to act in accordance with a specific mandatory directive that requires Defendants to protect and evacuate Plaintiffs and other United States persons stranded in Gaza.

150.     Additionally, in the last fourteen months, Defendants have consistently been evacuating United States citizens, nationals and their immediate relatives of different ethnic and religious backgrounds from the same region.

151.     Defendants' above-described actions, policies, course of conduct, or pattern of practice that mandate or permit the failure of the United States government to evacuate

Plaintiffs from Gaza during the ongoing conflict are discriminatory and constitute an action that targets United States citizens of Palestinian national origin for distinctive treatment.

152.     Defendants' above-described actions, policies, course of conduct, or pattern of practice that mandate or permit the failure of the United States government to evacuate Plaintiffs from Gaza during the ongoing conflict have had a discriminatory effect upon and have disparately impacted United States citizens of Palestinian national origin, and not United States citizens of other national origins.

153.     Defendants' above-described actions, policies, course of conduct, or pattern of practice that mandate or permit the failure of the United States government to evacuate Plaintiffs from Gaza during the ongoing conflict  does not serve a compelling state interest or a legitimate or public purpose, nor are they narrowly tailored to achieve any such interest, because other countries have already evacuated their citizens from Gaza and Defendants have also evacuated some United States citizens and their immediate families under comparable circumstances from Gaza and surrounding countries.

154.     WHEREFORE, Plaintiffs request this Honorable Court grant declaratory and injunctive relief in the form described in the Prayer for Relief below, plus all such other relief this Court deems just and proper.

## COUNT II
## Violation of the Administrative Procedures Act, 5 U.S.C. 706(2)(A)
## (Arbitrary and Capricious Action)

155.     Plaintiffs incorporate and reallege paragraphs 1-154 as if fully set forth herein.

156.     The Department of State and Department of Defense regulations establish that Defendants have a clear and nondiscretionary duty to protect and evacuate United States citizens and nationals in the threatened area overseas.

157.     Since October 2023, Defendants have maintained the refrain that they cannot control who enters and exits Gaza and thus will not and cannot engage in evacuation efforts, procedures, and/or processes to safely evacuate United States citizens and their qualifying immediate relatives from Gaza. These statements, and Defendants actions to date, reflect a final agency action that adopts a policy of exerting minimal evacuation efforts for Plaintiffs' benefit when their duty is more substantial. Given Defendants' legal duties to undertake extraordinary measures, up to and including the use of military assets, this final agency action is arbitrary and capricious.

158.     Defendants failed to act in accordance with a specific mandatory directive that requires Defendants to protect and evacuate Plaintiffs and other United States citizens stranded in Gaza. See *Berkovitz v. United States,* 486 United States 531, 542-543 (1988).

159.     Defendants, in violation of the Administrative Procedure Act, 5 U.S.C. § 701, are willfully refusing to evacuate Plaintiffs and other United States citizens stranded in Gaza during the ongoing conflict, and have failed to carry out the responsibilities delegated to them. Defendants actions described above are willful, arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and should be declared unlawful pursuant to 5 U.S.C. § 706.

160.     Defendants' above-described actions, policies, course of conduct, or pattern of practice that mandate or permit the failure of the United States government to evacuate Plaintiffs, and other United States Citizens stranded in Gaza, during the ongoing conflict are not discretionary because the regulations regarding evacuation of United States Citizens from threatened areas overseas provide specific directions and are clear and unambiguous regarding the duties owed to Plaintiffs and other United States Citizens stranded in Gaza. See

*Berkovitz v. United States,* 486 U.S.531, 542-543 (1988); see also *United States v. Gaubert,* 111 S. Ct. 1267, 1275 n. 7 (1991).

161.     Defendants' failure to act in evacuating Plaintiffs and other United States citizens stranded in Gaza constitutes a final agency action in violation of the Administrative Procedure Act, pursuant to 5 U.S.C. §§ 551(13) and 704(a)(2).

162.     Pursuant to Section 10 of the Administrative Procedure Act, 5 U.S.C. § 702, Plaintiffs have standing and are entitled to a judicial review because they have suffered a legal wrong as a result of Defendants' agency action of failing to evacuate Plaintiffs and other United States Citizens stranded in Gaza due to discrimination on the basis of their national origin.

163.     Plaintiffs, and other United States citizens stranded in Gaza, have a clear right to the relief sought.

164.     Plaintiffs, and other United States citizens stranded in Gaza, have no other adequate remedy available to them.

165.     Plaintiffs, and other United States citizens stranded in Gaza, are entitled to mandamus relief compelling Defendants to protect and evacuate them from Gaza.

166.     WHEREFORE, Plaintiffs request this Honorable Court issue a writ of mandamus and grant declaratory and injunctive relief in the form described in the Prayer for Relief below, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs respectfully request:

1.      A declaratory judgment that finds that Defendants have failed to fulfill their duty to Plaintiffs by refusing to protect them and coordinate their evacuation from Gaza;

2.      An injunction that requires Defendants to coordinate the emergency evacuation of Plaintiffs and others in Gaza;

3.      An award of attorneys' fees, costs, and expenses of all litigation, pursuant to 28 U.S.C. § 2412; and,

4.      Such other and further relief as the Court may deem just and proper.

**Dated:** December 19, 2024                                          Respectfully submitted,

/s/ Maria A. Kari
MARIA A. KARI, ESQ.*
Law Office of Maria A. Kari
Texas Bar Number: 24127161
5300 N Braeswood Blvd, Ste 4-191
Houston, Texas 77096
info@mariakari.org
 (205)-862-8005

/s/ Lena Masri
LENA F. MASRI, ESQ.
ldf@cair.com
GADEIR ABBAS, ESQ. **
gabbas@cair.com
CAIR LEGAL DEFENSE FUND
453 New Jersey Ave SE
Washington, DC 20003
(202)742-6420
(202)379-3317

/s/ Yasmeen Elagha
YASMEEN H. ELAGHA, ESQ.
Illinois Bar Number: 6349166
Email: elagha.yasmeen@gmail.com
Telephone: (630) 456-8869

\* Motion for *Pro Hac Vice* Forthcoming

\*\* Licensed in VA, practice limited to
federal court

**COUNSEL FOR PLAINTIFFS**